Cite as 2020 Ark. App. 404

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-19-927

| | |
|---|---|
| KENNETH STEPHENS | **Opinion Delivered:** September 16, 2020 |
| APPELLANT | |
| V. | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23PR-18-562] |
| SKYLAR WILSON | |
| APPELLEE | HONORABLE DAVID M. CLARK, JUDGE |
| | AFFIRMED |

**MEREDITH B. SWITZER, Judge**

This appeal arises from the entry of a Faulkner County Circuit Court order requiring attorney Kenneth Stephens to pay Skylar Wilson $33,343.50 in attorneys' fees pursuant to Arkansas Rule of Civil Procedure 11. Stephens, the appellant herein, was the attorney for the Estate of James Luke Baker (the Estate). The probate case was filed in connection with a wrongful-death action that was subsequently filed in Jefferson County on October 23, 2018, concerning Baker's death. In this appeal, Stephens raises two points: (1) the circuit court abused its discretion in awarding Wilson judgment against him pursuant to Rule 11(c)(5) of the Arkansas Rules of Civil Procedure; and (2) the circuit court abused its discretion in denying Stephens access to an unredacted version of the billing statements upon which it determined the attorneys' fees award. We affirm.

To put the fee award in context, we summarize the following series of events. On September 13, 2018, James Luke's father, Kerry Baker, was appointed administrator of his

son's estate. Stephens entered his appearance in the probate case on September 14, 2018. Stephens began propounding discovery requests and issuing subpoenas to certain individuals he intended to involve in the Jefferson County wrongful-death action, which had not yet been filed, and also to AT&T and Verizon for the phone records of those individuals. These individuals moved to quash the subpoenas, and a hearing was held in probate court on October 9, 2018. The hearing consisted of only colloquy among counsel and the court; no witness testimony was presented.

Although the original discovery requests covered several areas of inquiry, Stephens stated at the hearing that the only question the Estate wanted answered was: "Accurately state your legal name, domiciliary physical address, current cell phone number in order that you may be properly denominated and served with service of processing, including summons, subpoena, and otherwise." He said that if the persons and entities answered that question, he would consider the party in compliance with the subpoena. The court asked counsel for each of the individuals if they were willing to accept service on behalf of their clients, and counsel agreed they would. The court asked counsel for AT&T and Verizon if he would accept service on behalf of his clients. Counsel responded that he probably could, but he had not talked to his clients about it. Stephens then interjected, "Well, Your Honor, that solves our problem."

The court confirmed that there was no further need for discovery because all Stephens wanted was names, addresses, and phone numbers in order to accomplish service; and, in fact, counsel for these individuals were prepared to accept service for them. At the end of the October 9 hearing, the circuit court verbally quashed the discovery subpoenas

2

served on the designated individuals because Stephens now had a valid method to achieve service if a wrongful-death suit were ever filed. The court withheld ruling on the subpoenas to the cell-phone providers.

The wrongful-death action was filed in Jefferson County on October 23, 2018, and Skylar Wilson's counsel accepted service for him in the case as agreed in the October 9 hearing. On October 24, 2018, the probate court entered its order quashing the Estate's subpoenas.

On November 29, 2018, Stephens filed a motion for Rule 11 sanctions against one of the designated individuals, Skylar Wilson, in the probate proceeding in Faulkner County. The motion alleged that Wilson had evaded service of the discovery subpoenas and then lied to his attorney and the court about it. Stephens was careful to note that it was Wilson, not his attorney, who had engaged in the alleged improper evasion of process. The motion contended in part that in addition to Rule 11 sanctions, the court had the inherent power to protect its proceedings from fraud and that Rule 45(g) of the Arkansas Rules of Civil Procedure allowed for contempt sanctions for dishonest evasion of service.

On December 17, 2018, Wilson responded, contending that the motion should be denied because neither Wilson nor his counsel made misrepresentations to the court, and the motion's allegations were defamatory misrepresentations lacking reasonable inquiry into the facts. Wilson requested that the court use its inherent authority to issue sanctions against the Estate and its counsel, and he asked for an evidentiary hearing. On December 27, 2018, the Estate replied.

3

On February 11, 2019, a hearing on the sanctions motions was held. At the outset of the hearing, the court began by recapping what had transpired at the October 9 hearing, noting that the discovery issue had been resolved by counsel's agreeing to accept service on behalf of their client. The court questioned why the parties were fighting over sanctions and explicitly warned that if the court found the hearing to be a complete waste of its time by either side, it would award full attorney's fees. Wilson's counsel stated that the motions for sanctions and hearing was a pretext for the Jefferson County wrongful-death case and that the testimony would show the court it was an attempt to bludgeon Wilson's credibility and paint him as a liar for purposes of the Jefferson County case.

Stephens presented testimony from his process servers regarding the service of the subpoena on Wilson. Wilson's counsel presented evidence that the process servers were wrong and that Wilson had not been served. At the conclusion of the hearing, the court found the hearing had no bearing on either the probate proceeding or the resolution of the probate case and was therefore a waste of time. The court instructed Wilson's counsel to submit her bills to Stephens for everything related to the hearing. The court told Stephens that if he disputed the amount, he could set it for a hearing.

The court subsequently filed a letter opinion on February 12, 2019. In it, the court addressed whether Wilson was lying when he said he was not the person served on September 21. The court found,

> Based upon the evidence presented and assigning to it the credibility it deserves, I am left to question if Mr. Wilson was or was not present at the time Mr. Noble and Mr. King arrived. Thus, I must find the estate has failed to carry its burden of proof.
>
> As I stated, this request for a finding of contempt on a non-party on an issue completely unrelated to the purpose estate [sic] that had been resolved some time

4

ago in no way furthers the estate being resolved. That is why I think allowing Mr. Wilson to recoup all his attorney fees is justified.

At the court's direction, on March 6, Wilson's counsel submitted to the court a letter and proposed order denying the Estate's motion for sanctions. She also submitted to Stephens redacted time records for fees incurred. Stephens responded and raised his objections. By letter dated March 15, the court made the following specific findings and directed Wilson's counsel to prepare an order reflecting the findings and orders as outlined in its letter: the total amount of fees requested ($33,343.50) was reasonable; the litigation was completely unnecessary to have the estate administered; the Estate pursued the matter in an attempt to bolster the plaintiff's case in the wrongful–death lawsuit; and Stephens should bear the entire cost for such a frivolous and unnecessary action. On May 29, a hearing was held to address the attorneys' fees issues. On July 26, the circuit court entered its order awarding judgment for attorneys' fees against Stephens individually. This appeal followed.

For his first point of appeal, Stephens contends that the circuit court abused its discretion in awarding Wilson judgment against him for violation of Rule 11(c)(5) of the Arkansas Rules of Civil Procedure. We disagree.

Stephens's basic contentions are (1) that there was no evidence that he attempted to depose Wilson and others or that he filed the Rule 11 motion for an improper purpose and (2) that he relied on the Michigan case of *In re Brown*, 582 N.W.2d 530 (Mich. Ct. App. 1998), to support his belief that it was reasonable and proper for the probate court to approve the deposition process prior to filing the wrongful-death action.

5

Rule 11 provides generally that an attorney's signature on pleadings, motions, and other designated documents filed with the court constitutes "a certificate by the signatory that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the motion is not interposed for an improper purpose, that the legal contentions are warranted by existing law or by nonfrivolous argument for extending, modifying, reversing, or establishing law, that the factual contentions have evidentiary support, and that the denials of factual contentions are warranted on the evidence. Subdivision (c)(2)(D) provides as a possible sanction "an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." Subsection (c)(5) provides:

> (5) A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5 but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

We review a circuit court's Rule 11 award of attorney's fees under an abuse-of-discretion standard. *McDermott v. Cline*, 2019 Ark. App. 472, 588 S.W.3d 144. In our review, we give the circuit court's determination of whether a violation of Rule 11 occurred, and what the appropriate sanction should be, "substantial deference." *Id.* The primary purpose of Rule 11 sanctions is to deter future litigation abuse, and the award of attorney's fees is but one of several methods of achieving this goal. *Id.* Rule 11 is not intended to permit sanctions just because the circuit court later decides that the attorney

6

against whom sanctions are sought was wrong. *Id.* The circuit court is expected to avoid using the wisdom of hindsight and should test counsel's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. *Id.* The essential issue is whether the attorney who signed the pleading or other document fulfilled his or her duty of reasonable inquiry into the relevant law, and the indicia of reasonable inquiry into the law include the plausibility of the legal theory espoused in the pleading and the complexity of the issues raised. *Id.* The moving party establishes a violation of Rule 11 when it is patently clear that the nonmoving party's claim had no chance of success. *Id.*

Here, the circuit court provided extensive findings of fact and conclusions of law in its July 26 order. The court explained that Rule 11(c)(5) permits the court to award to the prevailing party on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion; the filing of the motion for sanctions was an improper attempt to engage in a fishing expedition to file the wrongful-death lawsuit; the tactics of issuing the subpoenas in the probate case were not justified; at the hearing on the motions to quash, the Estate informed the court that the only information it needed was the proper address of the individuals who had been subpoenaed so that the Estate could serve those individuals with the complaint in the Jefferson County action; the attorneys agreed to accept service in that action, which was a benefit to the Estate; and the court thereafter granted the motions to quash.

The circuit court further found that filing the motion for sanctions did not benefit the administration of the Estate in any way. It found, instead, that the motion was an

7

improper, failed tactical decision to bolster the wrongful-death lawsuit and that it was brought only for that reason. The court specifically noted that Stephens's rationale for filing the motion—that is, to protect the process server's right to earn a living by clearing his name—was equally frivolous because the Estate owed no duty to the process server and had no interest in protecting his name. Finally, the court found that Stephens's improper conduct warranted him personally bearing the entire fee award.

We find no abuse of discretion in the circuit court's decision. Once counsel agreed at the October 9 hearing to accept service for Wilson in the anticipated wrongful-death action, the service issue was reasonably concluded. The circuit court explained in great detail why the motion for sanctions was not beneficial to the administration of the estate and was interposed for improper purposes, and it concluded that counsel's improper conduct "warrant[ed] him bearing the entire cost for such frivolous and unnecessary actions rather than the Estate." We are not convinced the circuit court acted improvidently, thoughtlessly and without due consideration, and therefore did not abuse its discretion. *Norwood v. Norwood*, 2020 Ark. App. 345, 604 S.W.3d 252.

For his remaining point of appeal, Stephens contends the circuit court abused its discretion when it denied him access to an unredacted version of the billing statements upon which it determined the judgment amount against him. We disagree.

As with the determination that sanctionable conduct has occurred, the circuit court has broad discretion in deciding what an appropriate sanction should be. *McDermott*, *supra*. Here, the circuit court explained its decision in its July 26 order:

> 3. The Court ordered that fee itemizations be provided by Skylar's counsel. The Court received and thoroughly reviewed unredacted, detailed fee itemizations

of WLJ [Wright, Lindsey and Jennings] Law Firm and FQ [Fuqua Campbell] Law Firm which were presented in camera to the Court. The legal services rendered were detailed in increments of .1 of an hour for each timekeeper performing services in connection with this matter. The hourly rates were listed and each of the individuals rendering services was included so that the Court could clearly determine what services were being rendered in connection with the Estate and its Motion for Sanctions against Skylar. Because of ongoing litigation by the Estate against Skylar, his family and several others (the "Jefferson Circuit Action"), redacted fee itemizations were provided by Skylar to the Estate, and copies of the redacted fee itemizations were provided to the Court as well.

4. The Court finds that the production of unredacted and redacted fee itemizations to it and only redacted fee itemizations to the Estate is fair and reasonable under the circumstances that there is ongoing litigation between the same parties and the unredacted fee itemizations contain attorney-client privileged information. The Court further finds that the redacted fee itemizations fairly reflect the services rendered and time expended for the Estate to review and evaluate them.

. . . .

10. The documentation submitted by WJL Law Firm reflects that various legal professionals, (partners, associate and paralegal) devoted a total of 84.8 hours at a total cost of $28,036.50 in their preparation and defense of the Motion for Sanctions. This did not include the 19.2 hours that FQ Law Firm also expended regarding the Motion for Sanctions at a total cost of $5,307.00.

The court further found that the specified billing rates were reasonable "based on these attorneys' experience and ability as well as rates traditionally charged by attorneys with similar experience, skill and ability and geographic area" and that the total amount incurred and requested was reasonable in light of the facts and circumstances of this estate and the wrongful-death action.

The circuit court provided the opportunity for hearings, observed and reviewed counsel's presentations and arguments, and reviewed both redacted and unredacted fee statements. The court was in the best position to assess the appropriateness of the requested

9

fees.  We are not persuaded that the court abused its discretion in determining the amount of the award.

Affirmed.

GLADWIN and VAUGHT, JJ., agree.

*James F. Lane, P.A.*, by: *James F. Lane*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Judy Simmons Henry* and *Kristen S. Moyers*, for appellee.